UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-20734-CIV-SEITZ/MCALILEY

CARLOS PEREZ, ERIC ZIMELMAN,
ANGELA D. RIEKE and DOROTHY
HAYS, individually and on behalf of
all others similarly situated,

        Plaintiffs,

vs.

ASURION CORPORATION; ASURION
INSURANCE SERVICES, INC.; ASURION
FLORIDA WARRANTY SERVICES, INC.;
LOCK/LINE, LLC; and LOCK/LINE
WARRANTY SERVICES OF FLORIDA, LLC,

        Defendants.

_____/

## OMNIBUS ORDER REGARDING CLASS ACTION SETTLEMENT

THIS MATTER is before the Court on various motions regarding the pending settlement of this

class action. They include the following: (1) Joint Motion for Leave to File Fourth Amended Complaint

and for Preliminary Approval of Settlement [DE-55, with corrected motion at DE-56]; (2) Joint Motion

to Revise the Approved Class Notice and Class Settlement [DE-63], which seeks to enhance the

settlement by adding 498 members of the previously approved National Class of 13 million members as

additional members of the previously approved Subclass of 15,000 members; and (3) the original Motion

for Class Certification [DE-26, filed many months before the parties resolved this dispute]. At a hearing

on January 23, 2007,[1] the Court verbally granted preliminary approval of the settlement of this class

action, pursuant to Federal Rule of Civil Procedure 23(b)(3) (the "Settlement"). (*See* DE-60.) This

Order memorializes the Court's verbal January 23rd Order, and approves the Enhancement of the

---

[1]     Details of the January 23rd hearing are set out, *infra*, at Section II.

1

Settlement, and sets a Final Fairness Hearing for **Friday, June 22, 2007 at 9:00 a.m.**  The Court has reserved a full day for the hearing.

The Court has carefully considered the parties' papers, the evidence submitted, the statements of counsel at three hearings on this matter, and the other relevant portions of the record.  For the reasons that follow, the Court grants the parties leave to:  (1) file the Fourth Amended Complaint, (2) amend the previously approved Settlement; and (3) amend the previously approved Class Notice.  For settlement purposes only, the Court grants certification of the National Class and Subclass, as defined in the parties' Settlement Agreement.  The Court appoints Adam M. Moskowitz, Esq. and the law firm of Kozyak Tropin & Throckmorton, P.A. as Lead Class Counsel, and further appoints (a) Lance A. Harke, Esq. and the law firm of Harke & Clasby LLP, and (b) Harvey Levine, Esq. and the law firm of Levine, Steinberg, Miller & Huver, as additional Class Counsel.  Finally, the Court authorizes the distribution of notice to the National Class and Subclass, and appoints Rust Consulting, Inc. ("Rust") as the Claims Administrator.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

1.      This litigation arises out of Plaintiffs' dissatisfaction with "wireless phone protection plans" in which they enrolled to insure their cellular phones.  Plaintiffs argue among other things, that these protection plans are not really insurance:  the required monthly premium "do[es] nothing more than create a right … to have the opportunity to pay additional monies in the form of the so-called 'deductible' in order to receive a refurbished phone worth less than the deductible alone."  (Compl. ¶ 28, filed in *Prohias v. Asurion Corp.*, Case No. 05-22259-CIV-SEITZ/MCALILEY, [the "Original Complaint"].)  The Original Complaint (further defined in paragraph 5, below) was filed on August 15, 2005, and included allegations that Defendants "demand unreasonable and large deductibles" that "range from $35 to $100 for each replacement phone," and that these phones have values much "less than even the deductibles that the customers are required to pay." (Original Compl. ¶¶ 1, 9.)

2

2.      This Settlement will provide relief for almost 13 million customers and spans from February 20, 2004 until the entry of this Omnibus Order (the "Class Period").  This Settlement is the result of combining three separate class actions – two that have been litigated before this Court for over a year and a half and one that has been litigated in the United States District Court for the Southern District of California for a slightly longer period.

3.      <u>The California Litigation</u>:  On July 5, 2005, Plaintiff Angela Rieke filed a proposed class action in the United States District Court for the Southern District of California against the Asurion Corporation ("Asurion Corp."), Asurion Insurance Services, Inc. ("AIS"), and Hartford Fire Insurance Company ("Hartford"), for which AIS serves as an agent.  That case is styled *Rieke v. Asurion Corp.*, Case No. 05-CV-1357-IEG (JFS) (the "California Litigation").  Plaintiff Rieke alleged nine causes of action including, among other things, that she and other similarly situated subscribers received replacement phones from AIS worth less than the deductibles charged in the insurance program to which she subscribed.  AIS, Asurion Corp., and Hartford filed motions to dismiss in the case, and the district court granted the motion as to certain of the claims, but allowed several other claims to proceed.

4.      The parties in the California Litigation conducted written discovery and took various depositions, including the deposition of Plaintiff Rieke and AIS's corporate representative.  Asurion Corp., AIS, and Hartford answered the Second Amended Complaint, and class certification and merits discovery commenced.  Harvey Levine, Esq., of Levine, Steinberg, Miller & Huver, represents Plaintiff Rieke.

5.      <u>The Florida Litigations</u>.  On August 16, 2005, Plaintiff Maria Prohias[2] filed a proposed class action[3] in this Court against three different groups of Defendants:  (1) Asurion Corp., AIS, and

---

[2]      Plaintiff Jose Sanchez has since replaced Plaintiff Prohias as the named class representative.

[3]      *Prohias v. Asurion Corp.*, 05-22259-CIV-SEITZ/MCALILEY.  The Complaint was later amended to add Carlos Perez as a named Plaintiff.

3

Asurion Florida Warranty Services, Inc. ("AFWS") (collectively "Asurion"); (2) lock\line LLC and

lock\line Warranty Services of Florida (collectively  "lock\line"); and (3) The Signal and Signal

Holdings, (collectively "The Signal").  Thereafter, the Defendants filed extensive motions to dismiss,

based in part on a prior settlement involving the Defendants (the *Greiff* settlement) and the alleged legal

inadequacy of each of claims.  Plaintiffs filed oppositions to these motions.

      6.      All counsel met and conducted an initial conference to prepare a Joint Scheduling

Report.  In the Joint Scheduling Report, Plaintiff described the Defendants' practices as unfair, claiming

they required "deductibles which exceed the value of the replacement used or refurbished phones."

Plaintiff served discovery upon each Defendant, including requests for production, interrogatories and

notices for corporate representative depositions.  The parties negotiated and litigated the scope of

discovery.  All parties served their required Initial Disclosures.

      7.      On March 3, 2006, the Court conducted an initial status conference to discuss the

motions to dismiss, among other things.  At the hearing, the Court granted in part lock\line's motion to

dismiss without prejudice, specifically holding that Plaintiff Prohias did not have standing to bring any

claims against lock/line.  The Court held that

> even though Plaintiff Prohias purportedly has paid premium charges to the
> lock/line Defendants . . . , she can only speculate that lock/line would have
> sent her a lower-value and/or defective replacement phone, had she needed
> one.  Such speculation that she would not have received the benefit of her
> bargain does not constitute an injury-in-fact.

(DE-87, March 6, 2006 Order.)  Accordingly, the Court required Plaintiffs to demonstrate in the amended

pleadings that each proposed class representative had standing with respect to each Defendant – by

showing that they not only paid premiums, but also that they received a replacement phone that was

either defective or of a lower value than their deductible.  The Court lifted the stay on class certification

and merits discovery as to the remaining claims.

8.     Pursuant to the Court's Order, three individual putative class action complaints were filed in March 2006 against Asurion, lock\line and The Signal, respectively.  Carlos Perez filed a complaint against Asurion  (*Perez v. Asurion Corp.*, Case No. 06-20734-Civ-SEITZ/MCALILEY); Maria Prohias filed a complaint against The Signal  (this case retained the original case number, 05-22259); and Milva Lissabet, Eduardo Perez, Eric Zimelman, Dorothy Hays and Lisha Gomez filed a complaint against lock\line (*Lissabet v. lock\line*, Case No. 06-20733-Civ-SEITZ/MCALILEY).  This Settlement involves only the *Perez* and *Lissabet* actions.[4]

9.     Discovery commenced in the *Perez* and *Lissabet* actions.  Numerous documents were produced in each case, and depositions were taken of each named Plaintiff and the corporate representatives of each Defendant in Miami, Kansas City, and New York.  Specifically, Plaintiffs took the depositions of Asurion representatives Mr. James Gamble and Mr. Roger Anthony Detter regarding all of the issues relevant to these claims.  Plaintiffs also took the depositions of corporate representatives from lock/line, including Gary Henry, Peter Alvarado, and Jeff Kulla.

10.     On June 20, 2006, Asurion filed an extensive motion for summary judgment seeking to dismiss all claims alleged against it.  On June 23, 2006, lock\line filed its own motion for summary judgment as to all claims.  The primary basis of these motions was that the value of each of the replacement phones provided to the entire putative class always exceeded the paid deductibles, when all costs were included. The motions also included a legal challenge to the viability of the Plaintiffs' unjust enrichment claims.  Plaintiffs filed equally extensive responses to the motions.  Given the pending settlement, the Court has denied these motions as moot.

11.     On June 26, 2006, Plaintiffs Perez and Lissabet filed comprehensive motions for class certification, seeking to certify a nationwide class of all subscribers.  (DE-26, in Case No. 06-20734 and

---

[4]     Asurion Corp. merged with DTS lock/line Inc. on January 1, 2006.  The Signal has chosen to continue to defend the case against it.

DE-24, in Case No. 06-20733.)  The Plaintiffs alleged that both cases could be certified on a nationwide basis.  Defendants filed lengthy oppositions to each motion.  The certification motions were pending when this settlement was reached.

12.      <u>Discovery Conducted in the California and Florida Litigations</u>. Over approximately the last eighteen months, the parties in all of the lawsuits conducted discovery on the relevant issues.  Among other things, Defendants served document requests on all Plaintiffs and took the depositions of the individual class representatives Angela Rieke, Carlos Perez, Eric Zimelman, Dorothy Hays, Lisha Gomez and Eduardo Perez.  Plaintiffs propounded document requests and interrogatories to Defendants and took several depositions of each Defendant.  Plaintiffs' discovery focused on both the merits of their claims and the viability of a certifiable class.  As previously mentioned, Plaintiffs took the depositions of several of Asurion's and lock/line's corporate representatives, eliciting testimony on numerous topics, including:

* The cost of the replacement equipment furnished to subscribers, including the named Plaintiffs, in fulfillment of subscribers' claims;

* The cost of fulfilling subscribers' claims;

* The value of the replacement equipment furnished to subscribers, including the named Plaintiffs, in fulfillment of subscribers' claims;

* The process by which Defendants procure equipment;

* The procedure for administering subscribers' claims, including the "script" used by customer service representatives and claims adjusters when processing subscribers' claims;

* The policies, guidelines, practices, procedures and/or criteria for determining and setting deductibles for filing claims for lost, damaged and/or stolen wireless equipment;

* The policies, guidelines, practices, procedures and/or criteria for evaluating and either denying and/or approving submitted claims regarding wireless equipment;

* The policies, guidelines, practices, procedures and/or criteria for providing replacement

equipment and determining whether wireless equipment is "of like kind and quality;"

* Any and all goods and/or services that were provided by Asurion and lock\line and/or an affiliated entity to Plaintiffs and any and all documents, materials and/or information that was provided by Asurion and lock\line to them relating to issues in this litigation; and

* The drafting and interpretation of the underlying insurance policies.

13.     In response to Plaintiffs' document requests, the Defendants in *Rieke*, *Perez* and *Lissabet* produced over 100,000 pages of documents, including data and charts that reflected AIS's actual and direct costs for procuring and shipping the replacement phones during the Class Period.  In the *Rieke* Action, Plaintiffs' discovery efforts also focused on the drafting, interpretation and implementation of the applicable insurance policies, including the use of the term "deductible."

14.     The Settlement Discussions.[5]   The parties spent the last eight months discussing the terms of a possible settlement of both the California and Florida Litigations, after discovery revealed various pertinent facts (including the actual cost of the new and refurbished replacement phones) and after Plaintiffs were able to obtain evidence confirming Defendants' nationwide practices.

15.     First Mediation Session.  In early May 2006, the parties contacted Brian Spector, an experienced mediator, to serve as the mediator in these cases.  In early June 2006, Mr. Spector required the parties to submit briefs regarding the pending claims and allegations.  He asked for copies of all key pleadings, as well as a confidential mediation statement that summarized each party's factual and legal positions.  Finally, he requested a recitation of any prior settlement discussions and any pending settlement demands and offers.  On July, 12, 2006, the parties conducted the first mediation session.  Counsel for each party and Asurion's corporate representative attended the day-long session, which including opening statements and individual and group meetings to discuss the merits and weaknesses of

---

[5]     The Court's findings regarding the settlement discussions and mediation sessions are based on the parties' representations to the Court.

the case.  At the conclusion of the session, the parties determined that settlement was impossible without further discovery regarding certain critical issues.  The parties were able to reach agreement on a settlement discovery plan, which the Court approved.

16.     <u>Settlement-Specific Discovery Plan</u>.  First, Defendants produced, within 30 days, documents and information regarding the total number of refurbished phones that were provided during the Class Period and the manner in which Defendants purchased those phones (if obtained from a third party source).  These documents included, *inter alia*, contracts with suppliers for the phones, alternative offers provided by competing suppliers, and analysis and reports regarding these offers.  The Defendants and insurance carriers also exchanged documents regarding the values of the replacement phones.  Discovery revealed that Defendants provided approximately 13 million refurbished phones during the Class Period.

17.     Second, Defendants produced additional witnesses to testify regarding their procurement costs for replacement phones.  Lastly, Defendants assisted in producing for deposition a representative from one of the largest phone suppliers.  Plaintiffs agreed to research and provide to Defendants, within ten days after Defendants' discovery obligations were complete, alternative sources for refurbished phones.

18.     In late October 2006, the parties advised the Court and the mediator that they had completed all of the settlement discovery, and they were ready to conduct a second mediation session.  The parties conducted several telephonic conferences to advance the settlement process and prepare for the second mediation session.

19.     <u>Second Mediation Session</u>. On November 13, 2006, the parties conducted another day-long mediation session, during which they discussed the provisions of the proposed settlement.  Plaintiffs demanded specific aspects of the proposed relief, such as the transferability and expiration of the applicable vouchers and phone cards to increase their value for the Class Members.  Defendants' specific

demands included releases for several of their agents and subsidiaries. At the conclusion of the second mediation session, the parties agreed on a Memorandum of Understanding ("MOU"), which confirmed the terms of the proposed settlement. The terms outlined in the MOU are the same terms that are outlined in the parties' Stipulation of Settlement and Release ("Settlement Agreement"). The parties state that they did not discuss the issue of attorneys' fees until after they had agreed on the substantive terms of the settlement.

20.     The Fourth Amended Complaint. Pursuant to the Settlement Agreement, Plaintiffs sought leave from this Court to file the proposed Fourth Amended Class Action Complaint in the instant action. The Fourth Amended Class Action Complaint consolidates the *Perez, Lissabet* and *Rieke* actions, and contains essentially the same factual and legal allegations found in the individual complaints for those cases. Further, consistent with the June 26, 2006 Motions for Class Certification, the Fourth Amended Class Action Complaint redefines the putative class to encompass a nationwide class of consumers.

21.     The Settlement provides relief for a National Class and a Subclass. The National Class consists of subscribers who received a refurbished replacement phone during the Class Period and the Subclass consists of, specifically, those subscribers who received a refurbished replacement phone whose acquisition cost to Asurion was less than their applicable deductible. This was the criteria the parties agreed to use solely for the purpose of the Settlement. The parties determined that there are approximately 10 to 13 million members of the National Class and approximately 15,000 Subclass members.

22.     National Class Relief. The Settlement Agreement provides the following benefits to the National Class members:

> a.     Improved Disclosures. Asurion will ensure that, in the future, all placards and brochures distributed after the Class Period and describing the terms of the Programs

(whether provided in stores and/or in brochures and/or advertisements) will include language substantially similar to the following: "Claims may be fulfilled with *new* and/or *refurbished* equipment;" and "Each replacement phone is subject to a *non-refundable* [$ amount] deductible [or fee] per loss."

b.    <u>Improved Claims Administration Procedures</u>.  Asurion will ensure that, when a customer submits a claim, he or she will not receive a replacement phone for which Asurion's cost in providing the replacement phone is less than the amount of the applicable deductible or fee – unless Asurion specifically so advises the customer prior to collecting the deductible or fee.

c.    <u>Monetary Relief</u>.  Defendants agreed to provide each National Class Member with a Settlement Phone Card with a face value of $5.00; provided, however, that Defendants agree to distribute a minimum of $1,500,000 of Settlement Phone Cards.  In the event that there are fewer than 300,000 Settlement Participants, the $1,500,000 worth of Settlement Phone Cards will be distributed evenly among the Settlement Participants (*i.e.*, each Settlement Participant will receive a pro-rata share of the $1,500,000 worth of Settlement Phone Cards as opposed to a single Phone Card with a face value of $5.00).  Consequently, Settlement Participants may receive significantly more than $5.00.  The Settlement Phone Cards will be fully transferable and will expire 360 days after the date they are issued.  Defendants will bear the cost of the Settlement Phone Cards and the costs associated with their distribution.

23.    <u>Subclass Relief:  Vouchers</u>.  Each Subclass member will be entitled to all of the relief offered to National Class members.  In addition, Defendants will provide each Subclass member with a voucher entitling each Subclass member to obtain another new or refurbished phone (valued at between $75 and $150) directly from Asurion.  Each voucher will be valid for ninety (90) days after the date it is

10

issued and shall be fully transferable.  Defendants, through the Claims Administrator, Rust Consulting, Inc., will mail these vouchers (via first-class United States Mail) to each Subclass member's last known address, without requiring any action by the Subclass member.

24.     Cost of Claims Administration and Notice.  Defendants have agreed to pay all of the costs associated with the claims process as well as the mailing and publication of Notice to the 13 million class members.  Defendants estimate these costs to be approximately $3 million.  The Court finds this to be a valuable benefit to the Class.

25.     Postcard Notice.  A Postcard Notice will be mailed via United States Mail, postage prepaid, to the most recent address of all National Class Members.  Defendants will bear all of the cost of providing Postcard Notice.  Defendants have advised that they do not regularly send separate bills to their subscribers.  Instead, the wireless carriers (who offer Defendants' services) bill and collect the premiums for the Programs in their own, independent service bills.  Consequently, it is not feasible to include a Notice of the Class Action with each Class Member's telephone bill, because it would require the approval and cooperation of numerous non-party wireless carriers.  As such, a separate Postcard Notice is the most feasible and practical means of providing mailed notice to the Class Members. The Postcard Notice will briefly summarize the Litigation and Settlement and direct Class Members to the Settlement Website, where Class Members can obtain detailed information about the Settlement and print the complete Settlement Agreement and/or Proof of Claim form.  Class Members will also be able to submit a claim electronically by entering a personal identification number ("PIN") contained on the Postcard Notice, as more fully described below.

26.     The Postcard Notice will also direct Class Members to a toll-free telephone number they can call to obtain information about the Settlement and to request a copy of the complete Settlement Agreement and/or Proof of Claim form via U.S. Mail.  The Claims Administrator will operate the toll-

free number, which will provide an automated recording that instructs the Class Member to leave a message indicating his or her address and the documents being requested.

27.   <u>Publication Notice</u>.  Defendants, through the Claims Administrator, will cause a Summary Notice to be published once in the national weekend edition of *USA Today*.  The weekend edition of *USA Today* has a circulation of approximately 23.4 million readers and publishing the notice will cost approximately $130,000 to $200,000, depending upon the size of the advertisement.  This published notice is simply further insurance that all Class Members will receive some form of notice about the Settlement.  The Summary Notice will also be published on the Settlement Website.  The Summary Notice will highlight the terms of the proposed Settlement and provide instructions for obtaining the complete Settlement Agreement and/or Proof of Claim form and how to file a Request for Exclusion from the Class or Object to the Settlement.

28.   <u>Settlement Website</u>.  The Claims Administrator will maintain the Settlement Website. The Settlement Website will contain, among other things, the Summary Notice, the Settlement Agreement, the Proof of Claim form and a Question and Answer Form.  Class Members will be able to obtain information about the Settlement and print the complete Settlement Agreement and/or Proof of Claim form by accessing the Settlement Website.  Class Members will also be able to submit their Proof of Claim forms electronically by entering the requested information on the Settlement Website as more fully described below.

29.   <u>Certification of Service of Class Notice</u>.  Prior to mailing the Class Notice, the Claims Administrator will submit the list of names and addresses of the Class Members through the United States Postal Service's National Change of Address ("NCOA") processing center for up-to-date addresses and Coding Accuracy Support System ("CASS") certification.  The NCOA processing center contains a consolidated file of move information that, on average, contains approximately 108 million permanent change-of-address ("COA") records filed with the United States Postal Service.  Each record

contains the relocating postal customer's name along with an old and new address.  The old address is the one compared to the NCOA customer list for matching purposes, and the new address is the one returned – if a match is made – to the customer.  Since approximately 18 to 20 percent of the households and businesses in the United States move each year, the NCOA service is increasingly valuable in reducing undeliverables and helping increase response rates.  The Claims Administrator will further keep track of any returned or undeliverable Class Notices.

30.     <u>The Claims Process</u>.  Class Members will be able to submit claims by either:

a.     <u>Submitting Claims Via The Settlement Website</u>.

Class Members will be able to submit claims for the Settlement Phone Card simply by visiting the Settlement Website.  There, the Class Member will be requested to provide a PIN located on the Postcard Notice (that will enable the Claims Administrator to identify the Class Member) and to check a box verifying that the Class Member paid one or more monthly premiums to Defendants (in order to verify that person is actually a Class Member).  At the recommendation of the Claims Administrator, as a security measure, Class Members who are submitting claims on the Settlement Website will also be required to type in a special code that will be displayed on their computer screen that is designed to prevent computer fraud (such as computer programs that are designed to electronically submit multiple claims.)  After providing this basic information, a Settlement Phone Card will be automatically mailed to the Class Member.  If a Class Member does not have his PIN available, he or she will also have the option of submitting a claim on the Settlement Website by providing the information requested in the Proof of Claim form, as described below. The claims administrator advises that the Website should be operational within ten business days of the entry of this Order.

b. <u>Submitting Claims Via the Proof of Claim Form</u>.

As an alternative to submitting a claim on the Settlement Website, Class Members can mail completed Proof of Claim forms to the Claims Administrator.  The Proof of Claim forms will be available for printing on the Settlement Website.  Class Members can also request to have a Proof of Claim form mailed to them, free of charge, by contacting the Claims Administrator's toll-free number and leaving their mailing address with the automated service.  In order to enable Asurion and the Claims Administrator to verify that the claim is valid, Class Members who choose to submit Proof of Claim forms will be required to provide, to the best of their knowledge:  (a) their name; (b) current address; (c) current telephone number; (d) verification that they paid one or more monthly premiums; (e) their address and telephone number at the time they submitted their claim (if different than their current address and telephone number); and (f) the PIN Number that will be included on the Post Card Notice (if available).

31. <u>Claims Administrator</u>. The Claims Administrator will be responsible for:  (a) overseeing the distribution of Notice to the Class; (b) creating and maintaining the Settlement Website and the toll-free telephone number that Class Members can call to request information about the Settlement or copies of the Settlement Agreement and Proof of Claim form; (c) receiving Requests for Exclusion from the Settlement from Class Members and for compiling records relating to those Requests for Exclusion; (d) receiving objections to the Settlement from Class Members and for compiling records relating to those objections; (e) receiving and processing Proof of Claim forms submitted by Class Members; (f) distributing the Phone Cards to Settlement Participants; and (g) distributing the vouchers to the Subclass Members.

14

32.     The parties selected Rust Consulting, Inc. to be the Claims Administrator after considering Rust's deep experience in administering claims for hundreds of other similar class actions, its excellent record of service, as well as cost considerations.

33.     If the Court grants final approval of this Settlement, the parties have proposed that all Class Members provide the Settling Defendants with releases regarding all claims that were raised or could have been raised in the Florida and California Litigations relating to the claims asserted in these actions.  The Court recognizes that "[i]n order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action."  *Matsushita Elec. Indus. Co., v. Epstein*, 516 U.S. 367, 471 (1996).

## II.     THE HEARINGS ON PRELIMINARY APPROVAL

34.     On January 8, 2007, the parties filed a "Joint Motion for Leave to File Fourth Amended Compliant and for Preliminary Approval of the Settlement and Incorporated Memorandum of Law" (the "Joint Motion" [DE-50]).  On January 9, 2007, the Court held a hearing on the Joint Motion (the "First Hearing"), and instructed the parties to address certain specific aspects of the Joint Motion at another hearing set for January 23, 2007.  On January 18, 2007, the parties filed a "Corrected Joint Motion for Leave to File Fourth Amended Compliant and for Preliminary Approval of the Settlement and Incorporated Memorandum of Law" (the "Corrected Joint Motion" [DE-56]).

35.     On January 23, 2007, the Court conducted a second hearing (the "Second Hearing"), at which it granted preliminary approval of the Corrected Joint Motion.  The Court also directed the parties to do the following:  (1) provide supplemental information as to why they selected USA Weekend as the periodical in which to publish notice of the Settlement Agreement; (2) submit evidence of their efforts to provide additional notice regarding the *Perez* case to Class Members in the form of general media and

consumer reports and press releases; (3) publish a history of the course of this litigation on the Settlement Website; and (4) file a depiction of the Settlement Website prior to the Fairness Hearing.

36.    Plaintiffs have already filed with the Court examples of articles published in various news media discussing and advising the Class of the proposed Settlement and have advised that similar filings will follow prior to the Final Fairness Hearing.

37.    At the Second Hearing, the parties also advised the Court of a recently filed proposed class action in the United States District Court for the Central District of California, *Cole v. Asurion Corp.*, Case No. CV 06-6469 DDP (the "*Cole* case").[6]  The *Cole* case raised allegations relating to claims made under Asurion's Program with T-Mobile, where the applicable deductible was either $40, $70, or $110.  Class counsel had discussions with plaintiff's counsel in *Cole* prior to the Second Hearing.  While the plaintiff in *Cole* had an applicable deductible of $110, the class sought in the *Cole* Amended Complaint is not limited to only $110 deductible claims, but rather includes all individuals who purchased insurance from Asurion through T-Mobile who "were asked to pay or paid a deductible which exceeded the acquisition cost by Asurion of the replacement phone."  (DE-69, in Case No. 06-20734.)

38.    The First Amended Complaint in *Cole* adopts virtually verbatim the allegations from the California and Florida Litigations, which had been filed almost 15 months earlier.  Discovery has not commenced in *Cole,* and Plaintiff Cole has not yet filed a motion for class certification.  The papers submitted by the parties for preliminary approval of the instant settlement, including the Motion for Leave to File the Fourth Amended Complaint, all identified *Cole* and informed the Court that the proposed settlement would overlap with some of the claims raised in *Cole*.

39.    Although the plaintiff in the *Cole* case is not a member of this class, in that she never received a refurbished phone (or any phone) from Defendants, the Court instructed the parties that it was important to investigate all of the issues raised in *Cole* as they might relate to the proposed Settlement.

---

[6]    The *Cole* case was filed in October 2006.  The parties in this case signed the MOU on November 13, 2006, which was prior to the filing of the Amended Complaint in *Cole* on November 28, 2006.

40.     At the conclusion of the Second Hearing, the Court entered a verbal Order:  (1) granting preliminary approval of the parties' Settlement; (2) authorizing the sending of the proposed Notice to National Class and Subclass members as revised; (3) appointing Rust as the Claims Administrator; (4) appointing lead and class counsel; and (5) setting a Final Fairness Hearing.  (DE-60, in Case No. 06-20734.)  The Court instructed the parties to file a more detailed, written proposed Order that would memorialize the Court's verbal Order.  The Court also instructed the parties to provide any proposals to amend and enhance the approved Settlement in light of the allegations raised in *Cole* and/or any other litigation.

41.     On February 13, 2007, the parties filed the affidavit of Andrew Novak, which explained the reason for selecting the weekend edition of USA Today for publication of Class Notice.  (DE-67, in Case No. 06-20734.)  Based on this affidavit, the Court approves the weekend edition of USA Today for the publication of Class Notice.

## III.    THE PROPOSED AMENDMENT TO THE APPROVED SETTLEMENT.

42.     After the Second Hearing, Defendants determined that there was a very small group of National Class members who had deductibles other than $50 – namely $40, $85 and $110 – who made a claim, paid the premiums, and the deductibles, and received refurbished phones whose equipment cost was less than the applicable deductibles.

43.     Plaintiffs asked Defendants immediately to provide confirming discovery under oath regarding this group of National Class members.  In response, Defendants provided Plaintiffs with detailed charts and materials showing each and every specific refurbished cell phone that was used to fulfill claims for T-Mobile, MetroPCS, and Cricket programs, for which the deductibles varied from $50.

44.     According to these records, Defendants provided approximately 748,748 total replacement phones to T-Mobile customers that fell within the National Class.  Of these National Class members, the Defendants discovered that 127 phones (.002% of the total shipments) were provided to

17

customers where the applicable deductible was $40 and the equipment cost of the phone was less than $40. They also provided 129 phones (another .002% of the total shipments) where the applicable deductible was $110 and the equipment cost of the phone was under $110.

45.     According to the records, Defendants provided 302,718 total replacement phones to customers of MetroPCS and 117,993 replacement phones to customers of Cricket that also fell within the National Class. Among these National Class members, Defendants discovered that 214 phones (.07% of the total shipments) were provided to MetroPCS customers where the deductible was $85, and the equipment cost was less than $85, and 28 phones (.02% of the total shipments) to Cricket customers where the deductible was similarly $85 and the equipment cost was under $85.

46.     In sum, the Defendants identified approximately 498 additional members of the National Class who would now qualify for the approved Subclass relief (currently 15,000 members) and would therefore also be entitled to receive vouchers for an additional phone.

47.     On January 31, 2007, as part of this confirming discovery, Plaintiffs took the sworn deposition of James Flautt, Asurion's corporate representative, on the specific issue of these additional 498 claims. Mr. Flautt confirmed the veracity of the information Defendants provided and stated that an exhaustive investigation had been undertaken, there were no other phones that fell within the approved Subclass criteria, and specifically, there were no replacement phones where the applicable deductible was $70 and the cost of the replacement phone was less than the $70.

48.     As a result of these additional 498 claims, the parties negotiated the Enhancement to the approved Settlement. Much discovery in this case revealed that the majority of the replacement phones received by Subclass members were only marginally lower than the deductible rates (*i.e.* $44 to $49, and therefore only $5 less than the paid deductible). Although the value difference was relatively small, each Subclass member would still receive a voucher for an additional phone with a value at least $75 but not more than $100 (more than 25 times the loss or injury under the Settlement terms). Following this

reasoning and logic, the parties agreed upon the Enhancement – namely that Subclass members with deductibles of $85 and $110 (where the replacement phone had a slightly lesser value) would receive the same voucher terms (transferability and expiration terms) but with an increased value of at least $125 but not more than $150.

49.     All of these vouchers will also be mailed directly to these additional 498 Subclass members with no claim process required.  This process will treat all Subclass members in the same manner.

50.     On January 31, 2007, the Court set a status conference for February 14, 2007 at 10:00 a.m. to discuss any proposed enhancements to the approved Settlement.  On February 9, 2007, the parties filed their "Joint Motion to Revise the Approved Class Notice" (the "Joint Motion to Revise"), to propose the Enhancement to the Court.  (DE-63, in Case No. 06-20734.)

51.     Prior to the status conference, Class Counsel discussed the proposed Enhancement with counsel in the *Cole* case.  On February 13, 2007, the Court received a phone call from counsel for Plaintiff Cole, requesting permission to appear at the status conference.  Cole's counsel, Mr. Taras Kick, Esq., was not admitted *pro hac vice* to appear in this District.  As a courtesy, the Court permitted Mr. Kick to attend the February 14, 2007 proceedings via video conference, and entered an order requiring the parties to address whether Mr. Kick should also be permitted to actively participate in the proceedings.

52.     Both Class Counsel and Defendants filed objections to Mr. Kick's active participation. Among their objections was the fact that Ms. Cole admitted she is not a member of the National Class or Subclass in *Perez* and thus did not have standing to object to this proposed Settlement.  Further, Ms. Cole's individual claims, as well as the claims of all those who similarly did not receive refurbished phones from Defendants, would still proceed in the *Cole* action if the Court were to grant final approval of this Settlement.

19

53.     The Court conducted the hearing on February 14, 2007 to consider the Enhancement (the "Third Hearing").  While Mr. Kick was able to observe the proceedings, the Court did not allow his active participation.

54.     At the hearing, the Court considered the Joint Motion to Revise, arguments of counsel, and all of the evidence in the record.  The Court granted the parties' motion, with a few revisions to the Notice and Settlement Agreement as instructed.  The Court also raised an issue with appointed Lead Class Counsel regarding the designation of the Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP (the "Lerach Firm") as additional Class Counsel, in light of some recent public events regarding that firm.  Lead Class Counsel has notified the Court and all parties that the Lerach Firm has agreed not to serve as one of the appointed "Class Counsel" in this litigation.

55.     After the Third Hearing, Mr. Kick filed an emergency Motion/Application to Permit Winessa Cole to Intervene [DE-74, in Case No. 06-20734], pursuant to Federal Rule of Civil Procedure 24(b).  The Court considered the parties' papers and the relevant portions of the record, and exercised its discretion not to allow Ms. Cole's intervention [DE-86].

## IV.     THE LEGAL STANDARD FOR PRELIMINARY APPROVAL.

56.     An overriding public interest in favor of settlement exists, particularly in class actions that have the well-deserved reputation of being the most complex form of litigation.  *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[7]  Preliminary approval is the first of a two-step process for approval of a proposed class action settlement.  In this first step, the Court need only determine whether the proposed settlement falls within the range of possible approval and whether it is reasonable to issue notification to class members of the settlement's terms.  In the second step, after notice to the class and an opportunity is provided for absent class members to object or otherwise be heard, the Court then

---

[7]        In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

determines whether to grant final approval of the settlement as fair and reasonable under the Federal Rules of Civil Procedure.

57.     Preliminary approval of a proposed class action settlement does not involve a final determination of the merits of the proposed settlement or affect the substantive rights of any class member.  The purpose of preliminary approval is to decide whether to communicate the proposed settlement to the class, to review and approve the proposed form of Notice to the class, and to authorize the manner and form of dissemination of the notice.  *See Manual for Complex Litigation (Third)* § 30.41, at 236-37 (1995) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval, the court should direct that notice" issue and should schedule a final approval hearing).  In the course of that determination, the Court must perform a preliminary fairness evaluation and make a preliminary determination that the proposed class satisfies the criteria for class certification under Rule 23.  *See Manual for Complex Litigation (Fourth)* § 21.632, at 320-21 (2004).

**V.     DISCUSSION AND FINDINGS.**

58.     <u>Settlement Class Certification</u>.  The parties have shown that class certification is appropriate at this stage under Federal Rules of Civil Procedure 23(a) and 23(b)(3) for purposes of settlement.  A class action may be maintained when the action satisfies all of the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the alternative requirements of Federal Rule of Civil Procedure 23(b).  *See Pickett v. Iowa Beef Processors*, 239 F.3d 1276, 1279 (11th Cir. 2000). Specifically, Rule 23(a) sets forth four prerequisites for class certification:  (1) "numerosity," meaning that the class is so numerous that joinder of all members is impracticable; (2) "commonality," meaning that there are questions of law or fact common to the class; (3) "typicality," meaning that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *See Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 613 (1997); Fed. R. Civ. P. 23(a).  In addition, Rule 23(b) requires that one of three further criteria be satisfied.  In this case, the parties seek certification under Rule 23(3)(b)(3), because questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

　　59.　　Based on the evidence in the record, this Court finds, for settlement purposes only, that (a) the Class Members are so numerous that joinder of all Class Members in the *Perez* case is impracticable;[8] (b) there are questions of law and fact common to the Class that predominate over any individual questions;[9] (c) the claims of all of the Named Plaintiffs are typical of the claims of the Class; (d) the Named Plaintiffs and Class Counsel can fairly and adequately represent and protect the interests of all the Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the instant controversy.  Accordingly, the Court preliminarily certifies, solely for the purposes of effectuating this Settlement Agreement:

　　　　(a) a "National Class" defined as:

> All former and/or current Asurion and lock\line subscribers who reside in the United States and who, between the time period February 20, 2004 and the date of preliminary approval of the settlement (the "Class Period"):  (1) made any monthly premium payments to Asurion or lock\line; (2) submitted a claim for loss under Asurion or lock\line's Wireless Phone Protection Programs; and (3) received a replacement phone that was Refurbished (i.e., other than "new"); and

---

[8]　　　The proposed National Class consists of approximately 13 million members, and the proposed Subclass consists of approximately 15,000 members.

[9]　　　These include whether Asurion "adjusted the loss" for Class Member claims during the Class Period; whether Asurion's use of insurance terms such as "deductible" and "adjust the loss" is deceptive and misleading; whether Asurion was unjustly enriched or received payments and/or monies that it cannot retain, under principles of equity; and what is the amount and proper measure of damages the Class sustained because of Asurion's allegedly inequitable conduct.

(b) a "Subclass" defined as:

> All former and/or current Asurion and lock\line subscribers who reside in the United States and who, during the Class Period:  (1) made any monthly premium payments to Asurion or lock\line; (2) submitted a claim for loss under the Wireless Phone Protection Programs; (3) received a replacement phone that was Refurbished; and  (4) the third-party acquisition costs paid by Asurion for the Refurbished Phone was less than the amount of the deductible paid, exclusive of other non-equipment related costs incurred by Asurion to fulfill the claim.

60.   <u>Preliminary Approval</u>:  Based on its preliminary review of the proposed settlement terms, the Court finds that the parties' resolution of this matter – the proposed Settlement, with the Enhancement – is fair, adequate, and reasonable.  First, the Settlement is the product of an informed arms-length negotiation.  As described in Section I above, settlement negotiations did not begin until after Class Counsel had substantively litigated the three cases, taken several key depositions, and reviewed thousands of documents.  Second, the Court finds that the proposed Settlement falls within the range of possible approval.  Given the difficulties Plaintiffs would have to overcome if they were to litigate this case to verdict, the recovery under the terms of the Settlement is fair and reasonable.  Consequently, there is a significant possibility that this litigation, if not settled now, might not result in recovery for all or even part of a certified Class, or might result in a recovery which is not as good as the instant Settlement Class.  Accordingly, the Court preliminarily approves the Settlement with the Enhancement – subject to further consideration at the June 22, 2007 Final Fairness Hearing – and authorizes notification of the Settlement's terms to the National Class and Subclass.

61.   <u>Class Representative Plaintiffs</u>.  The Court designates Plaintiffs Carlos Perez, Eric Zimelman, Angela D. Rieke, and Dorothy Hays as representatives of the National Class and the Subclass ("Named Plaintiffs"). The Court finds that the designated class representatives can fairly and adequately represent and protect the interests of all National Class and Subclass members.

The Court finds no conflict among the class representatives and the class members, regardless of the individual amounts of deductibles charged and/or paid by each class member.

62.    <u>Class Counsel.</u>  In determining appropriate class counsel pursuant to Federal Rule of Civil Procedure 23(g)(1)(C)(i), the Court has considered the work counsel have done in investigating and prosecuting the claims, counsels' experience in handling class actions, counsels' knowledge of the applicable law, and the resources counsel have committed to representing the class.  The Court finds, as the discussion above shows, that those factors are satisfied.  The Court further finds that Plaintiffs' counsel have shown they will fairly and adequately represent the class.  Accordingly, the Court designates Adam M. Moskowitz, Esq. and the law firm of Kozyak Tropin & Throckmorton, P.A. as Lead Class Counsel, and designates (a) Lance A. Harke, Esq., and the law firm of Harke & Clasby LLP, and (b) Harvey Levine, Esq., and the law firm of Levine, Steinberg, Miller & Huver, as additional Class Counsel.  The Court authorizes Lead and additional Class Counsel to represent the Named Plaintiffs, to enter into the Settlement on behalf of the Class, and to bind the Class and themselves to the duties and obligations contained therein, subject to the Court's Final Approval of the Settlement.  The Named Plaintiffs and Class Counsel, on behalf of the Class, are authorized to take any appropriate actions required to effectuate the terms of the Settlement Agreement.

63.    <u>Incentive Awards.</u>  Class Counsel have requested that the Court award each Named Plaintiff the amount of $5,000.00 per representative.  Defendants do not oppose this request.  "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006).  Class Counsel state that each Named Plaintiff was actively involved in the prosecution of his/her respective action, each having had to prepare for and provide deposition testimony and submit documents and other discovery in response to Defendants' requests.  But for their participation and willingness to undertake the responsibilities and risks attendant

24

with bringing a representative action, the successful resolution of this dispute may have been greatly hampered.  Plaintiffs therefore submit that the proposed incentive award of $5,000 per Named Plaintiff should be approved.  Defendants will pay these awards, if the Court approves them.  The Court will make the determination whether to allow such incentive awards at the Final Fairness Hearing.

64.    Attorneys' Fees.  The parties represent that they did not address the issue of attorneys' fees until after they resolved every material term of the proposed Settlement.  The parties ultimately agreed that Class Counsel would be paid up to $1,600,000 in fees and costs, subject to Court approval, and that Defendants would not pay this award from the Class settlement fund.  The parties determined this amount based upon the specific lodestar amount of the Class Counsel law firms to date.  Class Counsel submit that the Court should approve the amount of attorneys' fees at the Final Fairness Hearing, in that it is less than the actual lodestar amount for each of the law firms.  The Court will determine the issue of attorneys' fees at the Final Fairness Hearing.

65.    Final Fairness Hearing.  This Court shall hold a Final Fairness Hearing on **Friday, June 22, 2007, at 9:00 a.m.**, at the United States District Courthouse, 301 North Miami Avenue, 5th Floor, Miami, Florida, to determine:  (a) whether the Settlement of the *Perez* case on the terms and conditions provided for in the Settlement, is fair, adequate, and reasonable as to the Class Members and should be approved by the Court; (b) whether a Final Settlement Order and Judgment as provided for in the Settlement Agreement should be entered; and (c) the amount of fees and expenses to be awarded to Class Counsel and the amount of the incentive awards to be paid to the Named Plaintiffs.  All further motions and papers in support of the Settlement, including responses to any objections and any application by Class Counsel for attorneys' fees and expenses, shall be filed and served no later than **Friday, June 8, 2007**.

66.    Notice.  The Court approves, as to form and content, the Amended Class Notice and Amended Postcard Notice filed with the Court on February 20, 2007.  The Court finds that the mailing of

the Amended Postcard Notice and the publication of the Amended Summary Notice meet the requirements of Federal Rule of Civil Procedure 23 and of due process, are the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto. Notice of the proposed Settlement shall be provided as follows:

(a) Within 60 days after entry of this Order, Defendants, through the Claims Administrator, shall cause the Amended Postcard Notice to be mailed to the last known address of all Class Members whose address can be identified through reasonably accessible electronic records available to Defendants;

(b) Within at least 21 days after mailing the Amended Postcard Notice, Defendants or their designated agent shall certify to the Court in a declaration, based on the personal knowledge of the declarant, that the Amended Postcard Notice has been timely mailed to all members of the National Class, and shall serve a copy of the declaration filed with the Court on Class Counsel; and

(c) Within 60 days after entry of this Order, Defendants, through the Claims Administrator, shall publish the Summary Notice and on the Settlement Website to be created and maintained by the Claims Administrator.

67. <u>Cost of Notice and Administration</u>. Defendants shall bear all costs incurred in providing Class Notice, as well as in administering the terms of the Settlement Agreement. In the event the Court does not give final approval to the Settlement Agreement, or the Settlement Agreement otherwise fails to become effective, neither the Named Plaintiffs nor Class Counsel shall have any obligation to Defendants for the costs of Class Notice.

68. <u>Claims Administrator</u>. The Court hereby appoints Rust Consulting, Inc. as the Claims Administrator.

69. <u>Opt Outs</u>. Any person falling within the definition of the Class who desires to request exclusion therefrom shall do so by mailing a written request for exclusion to the Claims Administrator

26

c/o Rust Consulting, Inc., P.O. Box 127, Minneapolis, MN 55440-0127, that includes:  (I) a signed statement requesting to be excluded from the settlement of the *Perez* case and (ii) the requesting party's name and address.  No request for exclusion will be valid unless it is made in the manner described in the Class Notice and this Order.  Request for exclusions must be postmarked no later than **Monday, May 21, 2007**.  A Class Member who chooses to be excluded from the Class will be excluded entirely from the Class and, therefore, from participation in the Settlement.  All Class Members who do not request exclusion from the Class pursuant to the procedure described above shall be bound by all determinations and judgments in the *Perez* case concerning the Settlement Agreement, whether favorable or unfavorable to Class Members, including, but not limited to, the validity, binding nature and effectiveness of the releases set forth in the Settlement Agreement.

   70. <u>Appearance</u>.  Any Class Member may enter an appearance in the *Perez* case at the Final Fairness Hearing at his or her own expense, individually or through counsel of his or her own choice.  All Class Members who do not enter an appearance will be deemed to be represented by Class Counsel.

   71. <u>Objections</u>.  Any Class Member may appear and show cause at the Final Fairness Hearing if he or she has any reason why the Settlement Agreement should not be approved as fair, adequate and reasonable, why a judgment should not be entered thereon, why attorneys' fees and expenses should not be awarded to Class Counsel or why the incentive award(s) should not be allowed; provided, however, that no Class Member shall be heard, and no objection may be considered, unless, by **May 21, 2007**, the Class Member files with the Court and serves on Class Counsel and Defendants' counsel, at the addresses set forth in the Class Notice, a written statement of the objection, personally signed by the Class Member, the specific reason(s), if any, for the objection, including any legal support the Class Member wishes to bring to the Court's attention.  Any Class Member who does not make his or her objection within the time and in the manner set forth in this Paragraph shall be deemed to have

waived such objection and shall be foreclosed forever from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement Agreement, to the award of attorneys' fees and expenses to Class Counsel, and to the incentive awards to the Named Plaintiffs.

72.      Adjournment.  The Court reserves the right to adjourn or continue the date of the Final Fairness Hearing without further notice to Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the Settlement Agreement.  The Court may approve or modify the Settlement Agreement without further notice to Class Members.

73.      In the event that the Settlement does not receive Final Approval as defined in the Settlement Agreement, or the Settlement Agreement is terminated pursuant to its terms for any reason, then the following shall apply:  (a) all orders and findings entered in connection with the Settlement Agreement shall become null and void and of no further force and effect; (b) class certification pursuant to this Order shall be vacated automatically, without prejudice; (c) the *Perez* case shall proceed pursuant to further Orders of this Court; and (d) nothing contained in this Order may be construed as an admission or concession by or against any party on any point of fact or law.

Accordingly, it is hereby

ORDERED that:

(1) The Joint Motion for Leave to File Fourth Amended Complaint and for Preliminary Approval of Settlement [DE-55, with corrected motion at DE-56] is GRANTED;

(2) The Joint Motion to Revise the Approved Class Notice and Class Settlement [DE-63] is GRANTED;

(3) The original Motion for Class Certification [DE-26] is GRANTED, for settlement purposes only; and

(4) The Court shall enter a separate Order that administratively closes the *Lissabet* case, since it has been consolidated into the instant action.  The parties shall have until **March 16, 2007** to file with

28

the Court their Stipulation of Dismissal With Prejudice of the *Lissabet* case. Once the Court receives the

Stipulation, it will enter an Order dismissing the case with prejudice.

DONE AND ORDERED in Miami, Florida this 28th day of February, 2007.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE


cc:    All Counsel of Record

29